IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| PEDRO IGNACIO-HERNANDEZ, #518631, | ) | |
| Petitioner, | ) | |
| v. | ) | NO. 3:25-cv-00490 |
| GRADY PERRY, | ) | JUDGE RICHARDSON |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Pedro Ignacio-Hernandez, an inmate of the South Central Correctional Facility (SCCF), has filed a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1, "Petition") and has paid the filing fee. (Doc. No. 6.)

Upon initial review of the petition, the Court directed Respondent to file the state-court record and to respond to Petitioner's claims. (Doc. No. 8.) Respondent filed the partial state-court record (Doc. No. 14) and a Motion to Dismiss the Petition as untimely (Doc. No. 15) with a supporting Memorandum of law. (Doc. No. 16). Petitioner filed a response to the Motion. (Doc. Nos. 22, 23.)

Review of these filings and the record reveals that an evidentiary hearing is not needed in this matter. *See Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (stating that evidentiary hearing is not required "if the record clearly indicates that the petitioner's claims are either barred from review or without merit"). Therefore, the Court shall dispose of the Petition as the law and

justice require. Rule 8, Rules Gov'g § 2254 Cases. As explained below, this action is untimely and will be dismissed on that basis.

## II. BACKGROUND

In 2013, a Davidson County jury found Petitioner guilty of three counts of rape of a child, one count of attempted rape of a child, and five counts of aggravated sexual battery. *See State v. Hernandez*, No. M2013-01321-CCA-R3CD, 2014 WL 3740028, at *1 (Tenn. Crim. App. July 29, 2014). Petitioner was sentenced to 84 years in prison.[1] These convictions were upheld on direct appeal, though the Tennessee Court of Criminal Appeals (TCCA) modified the three sentences for rape of a child (from 28 to 25 years each)[2] and affirmed the trial court's judgments as modified. *Id.* at 37–38, 39–40. On December 19, 2014, the Tennessee Supreme Court denied Petitioner's application for leave to appeal. *See Hernandez v. State*, No. M2019-01305-CCA-R3-PC, 2020 WL 3412134, at *1 (Tenn. Crim. App. June 22, 2020) Amended judgments were then entered by the Davidson County trial court on January 29, 2015, reflecting Petitioner's modified prison sentence (which, as noted above, was 75 years). *See id.*

---

[1] As to how this sentence was reached, the TCCA explained as follows:

> Following a sentencing hearing, the trial court imposed a sentence of 28 years for each of the defendant's convictions of rape of a child and ordered that the sentences be served consecutively. The trial court imposed a sentence of 10 years each for the defendant's convictions of aggravated sexual battery and a sentence of 10 years for his conviction of attempted rape of a child. The court ordered that the 10–year sentences for attempted rape of a child and aggravated sexual battery be served concurrently with each other and concurrently with the sentences imposed for the convictions of rape of a child. The total effective sentence is, therefore, 84 years. By operation of law, the defendant must serve 100 percent of his 84–year sentence.

*Hernandez*, 2014 WL 3740028, at *7.

[2] The net effect of the three consecutive sentences being reduced from 28 years to 25 years apiece was to lower the cumulative sentence from 84 years to 75 years.

More than four years later, on April 24, 2019, Petitioner filed a pro se petition for post-conviction relief in the trial court. (*See* Doc. No. 14-1 at 57.)[3] That petition was summarily denied as untimely, but Petitioner appealed to the TCCA[4] and won reversal of the trial court's judgment. *See Hernandez v. State*, 2020 WL 3412134. The TCCA remanded with instructions to appoint counsel for Petitioner and hold a hearing to determine whether the Tennessee post-conviction statute of limitations should be tolled. *Id.* at *3.

On remand, the trial court appointed counsel (Doc. No. 14-1 at 57–58), heard testimony over two days (the second of which involved Petitioner's testimony (*id.* at 59–74)), and issued a written order containing the following findings:

> Testimony revealed that after defendant Hernandez was represented by the Metropolitan Nashville Public Defender's Office at trial and on appeal, the family friend of the defendant, Ms. Meilatro Cruz secured legal representation from attorney Ivan Lopez after his trial by tendering a payment of $3,500 on March 9, 2013.
>
> On February 24, 2021, Ms. Cruz testified that she met with attorney Ivan Lopez and that he assured her that he would get defendant Hernandez out of jail within six months. Ms. Cruz also testified that Mr. Lopez did not have her sign a contract. Further, Ms. Cruz testified that she did not see or talk with Mr. Lopez until two years later and he did not tell her anything about the case other than he would see if he could help her. Ms. Cruz's testimony was uncontroverted.
>
> On March 24, 2021, Defendant Hernandez testified that he did not receive any communication from Mr. Lopez after several letters that were mailed to him. After Mr. Lopez did not communicate with him for over four years nor file a petition for post-conviction relief, defendant Hernandez filed a pro se petition for post-conviction on April 15, 2019. Defendant Hernandez indicated that he does not speak English and thought that Mr. Lopez was handling his post-conviction relief petition as he was hired to do. Mr. Hernandez's testimony was also uncontroverted.
>
> After careful consideration the Court finds the following:

[3] The pro se post-conviction petition is referred to in the cited document but is not itself in the record produced by Respondent.

[4] Petitioner's appellate brief (Doc. No. 14-1 at 1–39), as well as his filings in this Court, appear to have been composed with the help of an inmate legal advisor.

> 1) The defendant was represented by the Metropolitan Nashville Public Defender's Office at trial and through his appeal.
>
> 2) Ivan Lopez was hired to file a petition for post-conviction on behalf of the defendant. Ivan Lopez was paid $3,500 to represent the defendant on post-conviction on March 9, 2013 by Ms. Meilatro Cruz.
>
> 3) The defendant has not heard from Ivan Lopez. The defendant sent letters to Ivan Lopez and Mr. Lopez failed to respond.
>
> 4) The defendant filed a pro se petition for post-conviction.
>
> Further, the Court finds that Ivan Lopez has abandoned his representation of the defendant after receiving compensation to represent him. Defendant Hernandez was diligently pursuing his rights by hiring Mr. Lopez and the abandonment of representation by Mr. Lopez prevented a timely filing of petition for post-conviction relief. *Whitehead v. State*, 402 S.W.3d 615, 631 (Tenn. 2013). The Court further finds that the delay in filing a pro se petition for post-conviction relief is reasonable due to the language barrier and limited mental capacity of the defendant. Therefore, the tolling of the statute of limitations is warranted and the motion to toll the statute of limitations is GRANTED.

(Doc. No. 14-1 at 77–78.)[5]

Review in the post-conviction trial court thus continued. The trial court ultimately denied post-conviction relief on the merits, and the TCCA affirmed in an opinion that was filed on January 5, 2024. *Hernandez v. State*, No. M2023-00796-CCA-R3-PC, 2024 WL 62942 (Tenn. Crim. App. Jan. 5, 2024). The Tennessee Supreme Court denied permission to appeal on May 15, 2024. *Hernandez v. State*, No. M2023-00796-SC-R11-PC (Tenn. May 15, 2024).

Nearly a year later, on April 30, 2025, Petitioner's Section 2254 Petition was received in this Court. The Petition is dated April 21, 2025 (Doc. No. 1 at 61) and arrived in an envelope

---

[5] As far as the Court can tell, the record is silent on what, if any, consequences Mr. Lopez faced for abandoning a client in Petitioner's predicament. The Court likewise will remain silent as to its views about what should happen if an attorney accepts $3500 (in 2013 dollars) to provide assistance to someone in dire legal straits and then abandons the representation. To be fair to Mr. Lopez, the record in this case reveals that he at least appeared (or attempted to appear) on Petitioner's behalf on two occasions, in May 2013 and January 2015. (*See* Doc. No. 14-1 at 21–22, 36.)

postmarked April 23, 2025. (Doc. No. 1-1 at 2.) Respondent, after being directed to respond to the Petition, asks the Court to dismiss the case due to the bar of the applicable statute of limitations.

## III. ANALYSIS

Habeas corpus petitions under Section 2254 are subject to a particular statute of limitations,[6] which prescribes a one-year limitations period that "run[s] from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

---

[6] What the undersigned wrote years ago still holds true and applies herein:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. . . .
>
> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period" refers to the length of time-the specific number of days, months, or years-in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" pertains to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred. "Limitations law" refers to the entire body of rules, both statutory and judge-made, by which courts determine whether limitations applies in a given case.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997) (footnotes deleted).

28 U.S.C. § 2244(d)(1); *Holland v. Florida*, 560 U.S. 631, 635 (2010). In this case, as in most, the limitations period ran from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," under Section 2244(d)(1)(A). Petitioner's judgment therefore became final 90 days after the Tennessee Supreme Court denied leave to appeal on December 19, 2014, when the time for seeking review in the U.S. Supreme Court expired; the AEDPA limitations period began to run on the following day, March 20, 2015. *See Bronaugh v. Ohio*, 235 F.3d 280, 283–85 (6th Cir. 2000).

The AEDPA limitations period expired a year later, in March 2016. Because the Petition was not filed in this Court until more than nine years after that, in April 2025, it is clearly untimely unless Petitioner is entitled to statutory and/or equitable tolling[7] (to a sufficient degree)[8] of the limitations period. "This framework necessitates that a court must first determine whether a petition was untimely under the statute itself [or is, instead, properly deemed timely under the statute due specifically to statutory tolling] before it considers whether equitable tolling should be applied." *Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002); *Felix v. McDaniel*, No. 3:09-CV-

---

[7] It is worth recalling the undersigned's observations from three decades ago:

> [t]he term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *supra* n.6, at 1039-40. The Court perceives that both kinds of tolling discussed herein (statutory and equitable) can either postpone the starting of the clock or stop it after it begins running.

[8] The question here is not simply whether *some* tolling is appropriate, but whether there is tolling *for a long enough period of time* for the Court to conclude that once the proper length of tolling is factored, the AEDPA's one-year limitations period did not expire prior to the filing of the instant federal habeas petition in April 2025.

00483-LRH, 2012 WL 666742, at *2 (D. Nev. Feb. 29, 2012) (stating that "the district court first must determine whether statutory tolling … applies before considering equitable tolling"). Accordingly, the Court analyzes statutory tolling first.

A. Statutory tolling

AEDPA's tolling provision, 28 U.S.C. § 2244(d)(2), provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." *Id.* Tolling under the statute thus depends on the post-conviction application having been (1) "properly filed," and (2) "pending" during the running of the AEDPA limitations period. "An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, *e.g.*, requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 121 S. Ct. 361, 363–365, 148 L.Ed.2d 213 (2000)). If the application is untimely pursuant to a state statute of limitations, tolling under Section 2244(d)(2) does not apply. And, *a fortiori*, if no State post-conviction application (properly filed or otherwise) ever had been pending prior to the expiration of the AEDPA limitations period, tolling under Section 2244(d)(2) does not apply. *See*, *e.g.*, *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012).

The state court in Petitioner's case tolled the one-year allowed for filing under the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. § 40-30-102(a),[9] thus giving him "a

[9] This Tennessee statute provides that, except in circumstances not present here, "a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken … or consideration of the petition shall be barred." Tenn. Code Ann. § 40-30-102(a). The upshot is that the statute

reasonable opportunity after the expiration of the [state] limitations period to present his [state post-conviction application] in a meaningful time and manner."[10] *Williams v. State*, 44 S.W.3d 464, 471 (Tenn. 2001). However, while this "subsequent decision to permit review may toll the time relating to the [state post-conviction] application"—and may thus render Petitioner's 2019 state post-conviction application "properly filed" for purposes of Section 2244(d)(2)—"it does not change the fact that the application was not pending prior to the filing of the application." *Moore v. Crosby*, 321 F.3d 1377, 1380 (11th Cir. 2003) (citing, *e.g.*, *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001)); *accord Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999), *aff'd*, 531 U.S. 4 (2000) (holding that "a state-court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable"); *see also Carter v. Pierce*, 196 F. Supp. 3d 447, 452 (D. Del. 2016); *McHoney v. South Carolina*, 518 F. Supp. 2d 700, 705 (D.S.C. 2007). In short, because Petitioner's state post-conviction application was not "pending" at any time prior to its filing on April 24, 2019, and because the AEDPA limitations period expired in March 2016, the plain language of Section 2244(d)(2) would preclude statutory tolling—except, according to Petitioner, the AEDPA limitations period actually did not expire prior to April 24, 2019, because equity demands that it be tolled at least until then (in which case statutory tolling from April 24, 2019 until May 15, 2024 would purportedly be a possibility). The entire conception behind Petitioner's argument here is debatable. *See Rudin v. Myles*, 781 F.3d 1043, 1054 n.14 (9th Cir. 2015) (rejecting the argument that habeas petitioner "can claim the benefit of equitable tolling in

---

prescribes a one-year (limitations) period for filing a post-conviction petition, upon the expiration of which limitations applies (i.e., a post-conviction petition is barred).

[10] A straightforward reading of the quoted language would indicate that the "due process" tolling applied under state law would operate to open a filing window *after* the limitations period has expired. But the Court understands tolling *not* to allow a claim after the limitations period has expired, but rather to prevent the limitations period from expiring in the first place. In any event, the Tennessee courts appear to construe tolling of the state limitations period as operating to extend that period, rather than to pause its running.

state court, thereby entitling her to statutory tolling in federal court"; "Equitable tolling under *Holland v. Florida* is a federal doctrine entirely separate from state law."); *Barrow v. Marshall*, No. CV 07-4736AGFMO, 2008 WL 1969325, at *2 (C.D. Cal. Apr. 30, 2008) (reciting framework wherein, after determining that federal petition was not timely filed, "the next step is to determine whether the limitations period should be statutorily tolled[,]" while "[t]he final step is to determine whether equitable tolling applies") (citation omitted). But equity does not demand tolling, as explained below. So, Petitioner's argument for statutory tolling fails because it depends entirely on an argument for equitable tolling that (as explained below) is without merit.

B. Equitable tolling

In addition to tolling under the statute, AEDPA's limitations period may be subject to equitable tolling in appropriate cases. *Holland*, 560 U.S. at 645–49. However, the doctrine of equitable tolling is used sparingly and is typically applied "only when a litigant's failure to meet a legally mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art*, 209 F.3d 552, 560–61 (6th Cir. 2000)). It is Petitioner's burden to show that he is entitled to equitable tolling, *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010), a burden he may carry by showing "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649; *see also Stiltner v. Hart*, 657 F. App'x 513, 520 (6th Cir. 2016).

In response to the Motion to Dismiss, Petitioner argues that he is entitled to extend the AEDPA limitations period across the years between March 2016 and April 2025 via equitable tolling, because of (1) his mental incompetence, (2) his inability to speak English, and (3) his reasonable belief that his retained attorney, Mr. Lopez, was acting on his behalf to pursue state

post-conviction relief in the year that followed his conviction becoming final. (*See* Doc. No. 23.) The state post-conviction court determined that Petitioner "was diligently pursuing his rights by hiring Mr. Lopez and the abandonment of representation by Mr. Lopez prevented a timely filing of petition for post-conviction relief," while the additional delay (after the state post-conviction limitations period expired) in filing a pro se post-conviction petition "[was] reasonable due to the language barrier and limited mental capacity of the defendant." (Doc. No. 14-1 at 77–78.) Petitioner urges this Court to defer to the state court's ruling (as applied to the issue of whether the AEDPA limitations period should be tolled), noting that the state court applied the federal equitable tolling standard announced by the U.S. Supreme Court in *Holland*. But, as explained below, Petitioner's lack of appropriate diligence prevents the outcome he urges.

1. *Diligence in pursuing federal rights*

The inquiry in this case begins and ends with diligence. Under *Holland*, 560 U.S. at 649, Petitioner must first show that he has been pursuing the rights asserted in the Petition diligently before showing that, despite his diligence, an extraordinary circumstance prevented timely filing. Importantly, Petitioner must show that he diligently pursued his federal rights "during the entire period over which he seeks equitable tolling. That means [he] must have pursued his claims with some regularity during that period, as permitted by his circumstances." *Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 368 (6th Cir. 2024), *cert. denied sub nom. Wershe v. City of Detroit*, 145 S. Ct. 1128, 220 L. Ed. 2d 422 (2025) (citations and internal quotation marks omitted).

The Court first notes that Petitioner appears to have known that he had one year following the close of direct review to pursue collateral review of his conviction. As he stated in an affidavit filed in the state post-conviction trial court: "Had I known that [Lopez] was not going to represent me on my post-conviction proceedings I would have found some other way to file my post-

conviction petition, within one year of my direct appeal being completed." (Doc. No. 14-1 at 34.) Still, he asks this Court to join the state post-conviction court in equitably tolling the period prior to his 2019 post-conviction filing, apparently with the assumption that once that filing was made, the AEDPA clock would begin running only after state post-conviction remedies were fully and finally exhausted. (*See* Doc. No. 1 at 9.)

But the Sixth Circuit has rejected the contention "that because a petitioner is required to exhaust state court remedies, it is implicit in the exhaustion doctrine that the [AEDPA] limitation[s] period does not begin to run until a petitioner has exhausted all of his state post-conviction remedies." *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). As Section 2244(d)(1)(A) makes clear, it is the conclusion of direct review, not the conclusion of *post-conviction* review, that marks the beginning of the AEDPA limitations period.[11] *Id.* (quoting 28 U.S.C. § 2244(d)(1)(A)). And, unlike in *Keenan v. Bagley*, a case cited in Petitioner's response (Doc. No. 23 at 8–9), there is no order or other action of the state post-conviction courts in this case from which Petitioner might reasonably have assumed, when he late-filed his pro se post-conviction petition in state court, "that any time spent pursuing this avenue would toll his federal statute of limitations." *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005). So, during the time he spent pursuing his remedies in state court or awaiting their pursuit by Lopez, Petitioner was charged with knowing that his federal remedies must also be diligently pursued.

[11] This means, among other things, that generally the AEDPA limitations period runs between the conclusion of direct review and the filing of a state post-conviction application; even if a state post-conviction application is properly and timely filed, the limitations period runs in the interim. For this reason, the general question is *not* whether at least one year has expired between the conclusion of the adjudication of a state post-conviction application and the filing of the federal habeas petition, but rather whether at least one year *total* has expired (i) between the conclusion of direct review and the filing of a state post-conviction application and (ii) between the conclusion of the adjudication of a state post-conviction application and the filing of the federal habeas petition.

Concerning Petitioner's pursuit of remedies, the record in this case establishes that Petitioner's friends Ruben and Milagro Cruz hired Attorney Lopez during the pendency of direct-review proceedings, to represent Petitioner during the state post-conviction proceedings that would follow, and that Lopez appeared on Petitioner's behalf twice (once just after trial, in May 2013, and once again in January 2015), both times before Davidson County Judge Monte Watkins. (*See* Doc. No. 14-1 at 21–22, 28–36.) Judge Watkins found that "Ivan Lopez was hired to file a petition for post-conviction on behalf of [Petitioner]"; that Petitioner "sent letters to Ivan Lopez and Mr. Lopez failed to respond," so Petitioner "filed a pro se petition for post-conviction" after the state post-conviction limitations period expired; and, that Petitioner was "diligently pursuing his rights by hiring Mr. Lopez," whose abandonment of Petitioner "prevented a timely filing of petition for post-conviction relief." (*Id.* at 77–78.) These findings were based on hearing testimony, including Petitioner's testimony that he filed his pro se post-conviction petition in 2019 after Lopez failed to respond to any of Petitioner's letters the "[m]any, many -- many times" Petitioner attempted to contact him. (*Id.* at 65–67.)

As alluded to above, equitable tolling of the AEDPA limitations period requires diligence in the pursuit of rights *under AEDPA*. "[I]n order for equitable tolling to apply, the petitioner must diligently pursue *habeas* relief." *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003) (emphasis added). Accordingly, Petitioner was obliged to act diligently in "both his filing of the federal habeas application and … his filing of state post-conviction applications." *Jones v. Pierce*, 188 F. Supp. 3d 378, 382 (D. Del. 2016) (citing *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005)). The diligent pursuit of state post-conviction relief alone, including by hiring an attorney for that discrete purpose, is not sufficient to establish diligent pursuit of rights under AEDPA. *See Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003) (affirming denial of equitable tolling where

argument for diligence "focuses on Vroman's diligence in pursuing his rights in Ohio state post-conviction proceedings" but "fails to address his lack of diligence in timely filing a petition for habeas relief"); *Tovar-Mendoza v. Martinez*, No. 1:18-CV-00982 KWR/LF, 2023 WL 6937953, at *5 (D.N.M. Oct. 20, 2023) (declining to apply equitable tolling where petitioner hired attorney for purposes of state post-conviction, and there were "no facts … suggesting that Petitioner told [attorney] to file a federal habeas petition, or that [attorney] told Petitioner he would file a federal habeas petition").[12]

The state post-conviction court found that Petitioner's long delay in filing his initial pro se petition was excusable due to his abandonment by Lopez, the language barrier, and his limited mental capacity. In this Court, Petitioner adds to these impediments the fact that his safety was threatened due to his child rape convictions when he sought assistance from fellow Spanish-speaking inmates at the prisons he was housed in before SCCF. (Doc. No. 25 at 19.) But these impediments were removed in "the latter part of 2018," when Petitioner was transferred to SCCF, removed from protective custody, and "was finally able to consult with a bilingual legal helper." (*Id.* at 20–21); *see Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding that access to capable translator and legal assistant "implies that a petitioner will not have reasonable cause for 'remaining ignorant of the legal requirement for filing his [habeas] claim'") (quoting *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001)). From that time, even if Petitioner diligently pursued his rights under the Tennessee Post-Conviction Procedure Act with his April 2019 state court filing, he has not shown that he diligently pursued his federal rights under AEDPA. As

[12] The court in *Tovar-Mendoza* distinguished *Fleming v. Evans*, 481 F.3d 1249, 1255–56 (10th Cir. 2007), in which "the Tenth Circuit found that habeas counsel had given *repeated misrepresentations* to petitioner that he was preparing *a federal habeas petition*, but he did not prepare one," and analogized to *Vue v. Dowling*, 716 F. App'x 749, 752 (10th Cir. 2017), "in which the petitioner merely *stated without detail* that his attorney led him to believe he would file *an appeal*," and "[t]he Tenth Circuit found this insufficient" to support equitable tolling. *Tovar-Mendoza*, 2023 WL 6937953, at *5 (emphasis added).

Respondent points out, he might have done so (but did not) by making a protective filing in federal court when he realized that Lopez had abandoned him, after his repeated, unsuccessful attempts to contact Lopez by mail convinced him of the need to turn elsewhere for aid in the pursuit of collateral relief. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005); *Heleva v. Brooks*, 581 F.3d 187, 192 (3d Cir. 2009) ("[A] petitioner may file a 'protective' petition … under *Pace* even where only unexhausted claims are at issue."). Instead, even after Petitioner's state post-conviction remedies were fully exhausted through the level of the Tennessee Supreme Court (with the aid of his inmate legal advisor, who helped Petitioner win reversal of the post-conviction trial court along the way), he waited nearly another full year before filing for habeas relief in this Court, while waiting for his appointed post-conviction attorney to send him (and his legal advisor) his case file from post-conviction proceedings "so that a proper fac[t][-]based federal habeas Petition could be prepared." (Doc. No. 25 at 25.) But such late availment of the federal forum, following late-but-successful availment of the state post-conviction forum, "can't show diligence." *Borns v. Chrisman*, 167 F.4th 335, 346 (6th Cir. 2026).

The Sixth Circuit has found that a seven-month delay (and indeed, delays "far less than seven months") between the conclusion of state post-conviction proceedings and the filing of a federal habeas petition not only fails to support the application of equitable tolling, but "actually suggests that equitable tolling is not appropriate." *Allen v. Yukins*, 366 F.3d 396, 404 (6th Cir. 2004). *See also Greene v. Lafler*, 457 F. App'x 485, 487 (6th Cir. 2012) (affirming denial of equitable tolling where delay in filing state post-conviction action was excused due to attorney abandonment, but petitioner was not diligent in waiting "five months after the conclusion of that action before filing his § 2254 petition"); *Murphy v. Parris*, No. 1:18-CV-00013, 2019 WL 1383466, at *4 (M.D. Tenn. Mar. 27, 2019) (finding equitable tolling inappropriate because the

petitioner failed to "demonstrate the requisite diligence in pursuing his federal rights, as he not only failed to make any protective filing in this Court" after he should have known that the AEDPA limitations period was not paused, but "waited five additional months" after his state post-conviction remedies were exhausted before filing his federal petition). Accordingly, this Court finds that neither Petitioner's retention of Lopez for purposes of state post-conviction proceedings, nor his conduct after discovering that Lopez had abandoned him in proceedings before the Davidson County post-conviction court, demonstrate that he pursued his federal rights diligently under *Holland* when he, with and through his bilingual inmate legal advisor, instituted state post-conviction proceedings and waited for their conclusion (in May 2024) plus nearly an additional year (until April 2025) before filing the Petition in this Court.[13]

2. *Extraordinary circumstances*

In view of the above finding that Petitioner did not pursue his federal rights diligently, the Court only briefly discusses extraordinary circumstances. Equitable tolling under *Holland* requires "that some extraordinary circumstance stood in [Petitioner's] way and prevented timely filing" of his habeas petition despite his diligent pursuit of his rights. *Holland*, 560 U.S. at 649. Petitioner asserts his cognitive impairment and inability to communicate in English, along with his abandonment by state post-conviction counsel, as extraordinary circumstances that prevented timely filing.

[13] This nearly one-year period, all of which ran against the applicable one-year limitations period, came on top of the approximately four-year period between the conclusion of direct review (in 2015) and the filing of the state post-conviction application. Consistent with a footnote above, all of this time presumptively (i.e., absent tolling) counts against the one-year limitations period. So Petitioner cannot reasonably claim that he thought that the filing of the federal habeas corpus petition was within the one-year limitations period just because less than one year lapsed between the conclusion of state post-conviction proceedings and the filing of the federal habeas petition.

While Petitioner asserts that he is "mentally incompetent" under *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011),[14] "with no real ability to read or write, let alone understand filing requirements or how to structure a pleading" (Doc. No. 23 at 2–3; Doc. No. 25 at 6), the state courts found him competent to stand trial, with "some understanding of plea bargaining and at least some familiarity [with] the concept of discovery." *State v. Hernandez*, 2014 WL 3740028, at *18.[15] He also appears to have understood the requirement for filing for post-conviction review and that Lopez had been retained for that purpose, and to have been able to write multiple letters (presumably in Spanish, without the aid of an inmate interpreter) to Lopez and to consult with a legal advisor at SCCF when he realized that no post-conviction petition had been filed. Moreover, Sixth Circuit precedent establishes that "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations[.]" *Cobas*, 306 F.3d at 444 (citing cases).

Regarding the language-barrier issue, as referenced above, the court in *Cobas* further explained that, "[i]n general," access to an inmate helper such as the inmate(s) who have provided translation and capable legal assistance to Petitioner since 2018 in state post-conviction proceedings, as well as before this Court, implies that the language barrier did not prejudice the ability to file a timely habeas petition. *Cobas*, 306 F.3d at 444 (holding "that where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts,

[14] *Ata* held that "mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." 662 F.3d at 742. The court noted that it was mindful of the requirement that mentally incompetent petitioners also must "demonstrate diligent pursuit of their rights" to prove their entitlement to equitable tolling. *Id.* at 745 n.8.

[15] The Court notes that during a pretrial competence hearing, three mental healthcare experts testified to the level of Petitioner's mental impairment based on their clinical evaluations of him. The TCCA devoted a substantial portion of its decision on direct appeal to a review of this evidence and the trial court's conclusions therefrom. *See State v. Hernandez*, 2014 WL 3740028, at *8–18. Petitioner does not claim that his mental impairment has worsened in the intervening years.

that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations"); *see also Roccisano v. United States*, 936 F. Supp. 96, 100 (S.D.N.Y. 1996), *aff'd*, 1998 WL 382600 (2d Cir. May 5, 1998) (cited with approval in *Cobas*, 306 F.3d at 443–44) (finding that alleged language barrier did not prejudice petitioner's habeas filing, since "[e]ven if Petitioner [could] not prepare his own petition, he could communicate well enough with the person who did so").

Finally, if petitioner had made a claim of actual innocence of the charges of conviction, the Court potentially could reach the merits of the Petition despite its untimeliness, under an "equitable exception" to the time bar of § 2244(d)(1). *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (recognizing that actual innocence can operate in rare cases as an "equitable exception to § 2244(d)(1)," something that is distinguishable from equitable tolling). But no such claim has been made here.

## IV. CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss (Doc. No. 15) is **GRANTED**. In view of its untimely filing, the Petition for Writ of Habeas Corpus (Doc. No. 1) is **DENIED** and this action is **DISMISSED**. As an evidentiary hearing is not required to reach this disposition, and in light of the disposition, all remaining pending motions (Doc. Nos. 17, 19, 21, 22, 24, 26) are **DENIED** as moot.

Because this constitutes a "final order adverse to" Petitioner, the Court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, a habeas petition is "denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable

whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Because reasonable jurists could not find it debatable that the Court is correct in its procedural ruling under the circumstances presented here, where Petitioner was plainly not diligent in pursuing his federal habeas rights, the Court declines to issue a certificate of appealability in this case. Petitioner may, however, seek a certificate of appealability directly from the Sixth Circuit Court of Appeals. Fed. R. App. P. 22(b)(1).

This is the final order in this action. The Clerk **SHALL** enter judgment under Fed. R. Civ. P. 58(b)(1) and close the file.

IT IS SO ORDERED.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE